IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| KERWIN L. SUMMAGE, | |
|---|---|
| Petitioner, | No. 4:10-cv-0529-JAJ |
| vs. | |
| UNITED STATES OF AMERICA, | **INITIAL REVIEW ORDER** |
| Respondent. | |

This matter comes before the Court pursuant to Kerwin L. Summage's ("Summage") November 8, 2010 petition filed under 28 U.S.C. § 2255. [Dkt. No. 1]. Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, the Court conducts an initial review of Summage's petition. For the following reasons, the Court denies Summage's petition.

### I. FACTUAL AND PROCEDURAL HISTORY

Kerwin Lamont Summage was convicted of two counts of production of child pornography and one count of possession of child pornography. The recordings that formed the bases of the charges against Summage depicted are exceedingly disturbing. The first scene depicted Summage's girlfriend, Melissa Brown, performing oral sex on her ten-month-old baby boy; the second depicted Summage having sexual contact with Brown's three-year-old daughter. Summage was acquitted of a second charge of possession of child pornography regarding pictures found in the temporary internet files on Summage's computer.

Officers discovered the child pornography while executing a search warrant, which was obtained while the Davenport Police Department was investigating Summage on unrelated allegations of prostitution and pandering. After the initial indictment, Summage brought a motion to suppress evidence arguing that the search warrant was invalid for lack of particularity and probable cause. The District Court granted Summage's motion, and the Eighth Circuit Court of Appeals reversed. See United States v. Summage, 481 F.3d 1075

(8th Cir. 2007) (Summage I). Summage took an appeal to the Supreme Court, which ultimately denied certiorari. Summage v. United States, 552 U.S. 1104 (2008). During the pendency of appeal, the case was assigned to the undersigned United States District Judge. The appeal to the Supreme Court did not toll the Speedy Trial Act because Summage did not seek a stay of the Eighth Circuit's mandate. Summage subsequently filed a motion to dismiss the indictment for violating the Speedy Trial Act's requirement that trial be held seventy days following arraignment. 18 U.S.C. § 3161(c)(2). This Court dismissed the indictment without prejudice.

The government refiled the indictment the next day, and trial was held between June 23 and 30, 2008. On the first day of trial, Summage expressed dissatisfaction with his appointed counsel, Anne Laverty, and elected to proceed pro se. Summage requested that Laverty stay on as co-counsel, his complaints about her level of preparation notwithstanding. This court denied a request for hybrid representation, and the case proceeded to trial. Summage was convicted on June 30, 2008, and sentenced to 60 years' imprisonment. Summage appealed his conviction to the Eighth Circuit Court of Appeals, challenging the search warrant, the dismissal of the indictment without prejudice, and various evidentiary rulings. United States v. Summage, 575 F.3d 864 (8th Cir. 2009) (Summage II). The Eighth Circuit upheld Summage's conviction and the Supreme Court denied certiorari. This petition follows.

## II. STANDARDS FOR RELIEF PURSUANT TO SECTION 2255

Title 28, of the United States Code, section 2255, provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground (1) that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." United State v. Addonizio, 442 U.S. 178, 185 (1979). Rather, § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see also United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987)). A § 2255 claim is a collateral challenge and not interchangeable for a direct appeal, and an error that could be reversed on direct appeal "will not necessarily support a collateral attack on a final judgment." See United States v. Frady, 456 U.S. 152, 165 (1982).

Thus, a § 2255 motion "afford[s] federal prisoners a remedy identical in scope to federal habeas corpus." United States v. Wilson, 997 F.2d 429, 431 (8th Cir. 1991) (quoting Davis v. United States, 417 U.S. 333, 343 (1974)).

### III. CONCLUSIONS OF LAW

Summage raises 25 grounds that he argues entitle him to relief. For the ease of discussion, the Court has grouped together claims pertaining to the same subject matter under a single heading. First, Summage argues that he is entitled to relief based on Melissa Brown's alleged recantation of her trial testimony. Second, Summage claims he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Third, Summage attempts to litigate issues related to the search warrant for the third time. Fourth, Summage claims that federal district courts do not have jurisdiction over child pornography cases arising out of a state prostitution investigation. Fifth, Summage claims that the manner in which the search of his home was conducted violated both his right to privacy and his

right against self-incrimination. Sixth, Summage argues that the government violated his due process rights by failing to fingerprint the evidence seized during the search of his home. Seventh, Summage argues that the Court violated the Speedy Trial Act. Eighth, Summage renews his arguments that his trial was unfair for various reasons that have already been decided on appeal. Finally, Summage argues that he had inadequate access to discovery materials while representing himself. All of Summage's claims fail for the reasons discussed below.

## A. Brown's Allegedly Recanted Testimony

Summage asserts that Melissa Brown, a witness he called at trial, has recanted her trial testimony and the Court should therefore set aside his conviction. This recantation takes the form of various love letters and telephone calls Brown has made since the trial's conclusion. Although it is not entirely clear that Brown in fact recants her testimony in the letters, the Court assumes that such is the case from a statement in a letter from Brown stating that petitioner is innocent. This argument raises a number of issues, such as the extent to which the Constitution guarantees a defendant the right to a trial in which his own witnesses tell the truth and whether any recantation must be recorded in a signed affidavit for a defendant to proceed on this claim. As explained below, the Constitution only protects against the Government's knowing use of perjured testimony and a sworn affidavit is required to proceed on a claim that testimony has been recanted.

As a threshold matter, for a defendant to prevail on a § 2255 claim that perjured testimony denied him a fair trial, he must show that the prosecution knowingly used false testimony. The Eighth Circuit Court of Appeals has made clear that to show a violation of due process for use of false testimony, a defendant must establish that "(1) the prosecution used perjured testimony, (2) the prosecution should have known or actually did know of the perjury, and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." United States v. Funchess, 422 F.3d 698, 701 (8th Cir. 2005). Summage fails to sufficiently allege any of these elements.

4

In this case, Summage argues that his own witness committed perjury, though this may not necessarily be fatal to his claim. The Supreme Court has held that the prosecution "knowingly uses" false testimony when it solicits false testimony or "allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269 (1959). Nevertheless, the prosecution's knowing use of false testimony is a prerequisite for establishing a due process violation because the Constitution, and the Bill of Rights in particular, is a check on government power. In Corrigan v. Buckley, the Supreme Court held, "The Fifth Amendment 'is a limitation only upon the powers of the General Government,' and is not directed against the action of individuals." 271 U.S. 323, 330 (1926) (quoting Talton v. Mayes, 163 U. S. 376, 382 (1896)).

Summage fails to allege that the prosecution either used false testimony or that it "should have known or did know" that Brown testified falsely. Summage argues that the government "did not think [Brown] credible enough to present to the jury." Pet'r's Mot. at 4. Even if this is true, doubts as to whether the jury will find a witness credible is a far cry from "knowing" that the witness will testify falsely. See, e.g., U.S. v. Pagan-Santini, 451 F.3d 258, 265 (1st Cir. 2006). Furthermore, the government presented sufficient evidence to convict the defendant without the need for calling Brown. In closing, the prosecution noted, "We didn't need to call Melissa Brown. The circumstantial evidence is overwhelming." Trial Tr. 1031–32. This was true. Nothing in Petitioner's motion or attachments casts doubt on Melissa Brown's trial testimony. There is even less to suggest that the government somehow knew her testimony was false.

Summage also fails to show that the absence of Brown's allegedly perjured testimony would have affected the verdict. First, Summage argues that Brown was not a credible witness, while at the same time arguing that the jury would have acquitted him had she testified differently. If the jury did not perceive Brown as credible, then it would presumably not accept any assertion from her that the Petitioner was innocent. Second, the case against Summage was exceedingly strong—so strong that the government did not need to call

Brown as a witness. Furthermore, a great deal of evidence was adduced at trial showing that Summage possessed a remarkable degree of control over Brown and manipulated her with expert craft. The letters that she now writes to him in prison are eerily consistent with the trial evidence in this regard. Given the wealth of evidence against Summage and the evidence of his complete dominion over Brown, the Court concludes that Summage has failed to allege facts showing "a reasonable likelihood that the perjured testimony could have affected the jury's verdict." Funchess, 422 F.3d at 701.

The Court also finds that Brown's unsworn recantation contained in love letters to Summage are insufficient to contradict her testimony under oath. As a starting proposition, "[r]ecantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." Dobbert v. Wainwright, 468 U.S. 1231, 1233–34 (1984) (Brennen, J., dissenting from denial of certiorari); United States v. Ward, 544 F.2d 975, 976 (8th Cir. 1976). Courts usually require a sworn affidavit where recantation evidence is concerned. The Eighth Circuit has noted that "a failure to produce or explain the absence of an affidavit of a recanting witness will result in the denial of a motion for new trial." Id. at 976, n.2.

The Second Circuit considered a similar problem in Haouari v. United States, 510 F.3d 350 (2d Cir. 2007). In Haouari, the petitioner argued that he was entitled to relief under § 2255 based on a coconspirator's letter to the U.S. Attorney's Office. Id. at 352. The coconspirator had testified against Haouari at trial, but recanted his testimony his letter, claiming that Haouari "is an innocent man." Id. After discussing courts' general aversion to recantation testimony and reviewing decisions of other circuits, the court held, "At the very least, before a recantation statement may qualify as competent evidence for habeas review, it would need to be in sworn affidavit form, subject to penalty for perjury." Id. at 354. The court reasoned that a sworn affidavit was not an onerous requirement, and that "without the

possibility of a penalty for perjury, co-conspirators . . . have nothing to lose by writing letters attempting to free those who aided them in their criminal schemes." Id. Although Haouari involved recantation evidence from a coconspirator, the Court agrees with the principle that unsworn statements in letters are insufficient to recant testimony given under oath. Here, Summage claims that although Brown has promised to provide a notarized recantation, she has not yet done so, and he has had more than a year to get it. Accordingly, the Court dismisses the claim concerning Brown's allegedly recanted testimony.

### B. Ineffective Assistance of Counsel

Summage next argues that ineffective assistance of counsel violated his Sixth Amendment rights. Summage raises ineffective assistance claims against each and every lawyer appointed to his case. Three claims concern the representation provided by his first appointed counsel, Cory Goldensoph. Summage raises a single claim against his second appointed counsel, Dean Stowers. The vast majority of his claims, however, concern Anne Laverty, who successfully sought dismissal of Summage's initial indictment, represented Summage during pretrial proceedings following his subsequent indictment, and acted as standby counsel after Summage waived his right to counsel and proceeded pro se. The Court finds that all of Summage's arguments fail to satisfy the test for ineffective assistance of counsel articulated as in Strickland v. Washington, 466 U.S. 668 (1984).

To succeed, an ineffective assistance of counsel claim must satisfy a two-pronged test. First, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. This requires a defendant to "show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, the defendant must establish that deficient conduct prejudiced the defense. Id. at 687. This requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

A number of guiding principles apply to ineffective assistance of counsel inquiries.

First, when assessing the deficient performance prong, "courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Similarly, courts should avoid grading counsel's performance when a defendant fails to establish a sufficient degree of prejudice. Id. at 697. Finally, a court reviewing an ineffective assistance claim must consider "the totality of the evidence" before the original finder of fact. Id. at 696. After applying these principles to the matter at hand, the Court finds that none of Summage's arguments satisfy the Strickland test.

### 1. Cory Goldensoph

The Court first addresses the three arguments Summage raises against his first appointed attorney, Cory Goldensoph. Summage bases his first argument on the fact that federal agents discovered the footage of Summage molesting Brown's daughter while Goldensoph was reviewing the video evidence against Summage. This discovery was unquestionably prejudicial, as Summage was convicted of a second count of production of child pornography and received an additional 30-year sentence. Goldensoph's conduct, however, did not fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Quite the opposite: Goldensoph's conduct would have been deficient had he failed to review the evidence against his client while preparing for trial. See id. at 691 (discussing an attorney's duty to make reasonable investigations).

Summage's other arguments regarding Goldensoph's representation also fail. Summage argues that Goldensoph "was also ineffective for trying to argue movant's federal case, [sic] using state laws." [Pet'r's Mot., Dkt. No. 1 at 37]. As the Court reads Summage's claim, Goldensoph apparently included some state law arguments when arguing the motion to suppress. Summage asserts that this conduct was ineffective because Goldensoph should have restricted his argument to federal law. However, Goldensoph prevailed on the motion to suppress. Any citation to state law clearly did not prejudice Summage.

Finally, Summage argues that Goldensoph did not "sufficiently argu[e] most other

8

issues stated in this motion." [Pet'r's Mot., Dkt. No. 1 at 37]. This overbroad argument is does not sufficiently allege deficient performance or prejudice and accordingly fails. Strickland, 466 U.S. at 694.

## 2. Dean Stowers

Summage next argues that his appellant counsel in Summage I, Dean Stowers, was ineffective for not visiting him and for not communicating more extensively with him. Summage's entire argument as to Stowers' allegedly ineffective assistance is limited to one sentence: "Dean Stowers, [sic] never once visited movant, nor cared enough to respond to many of movant's questions or concerns, or get involved in movant's case issues." [Pet'r's Mot., Dkt. No. 1 at 37]; see Strickland, 466 U.S. at 688 (discussing duty to communicate developments in a case to client). The letters from Stowers attached to Summage's petition illustrate that Stowers was in communication with Summage during the appellate process, and encouraged Summage to call him collect. [Pet'r's Ex. 27, Dkt. No. 1-2 at 43]. Summage's complaint appears to be that Stowers never visited him in person, which does not fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Summage fails to establish that the result of his appeal would have been different had Stowers met Summage in person or communicated with Summage more extensively. Id. at 694.

## 3. Anne Laverty

The bulk of Summage's ineffective assistance argument is reserved for the conduct of his final appointed counsel, Anne Laverty. As an initial matter, this court holds that Summage has waived any claim to ineffective assistance after his decision to proceed pro se. Summage's arguments concerning Laverty's pretrial conduct are as follows: failing to adequately prepare to rebut evidence of his prior sexual misconduct, not communicating with Summage sufficiently, "misleading" Summage about the benefits of pro se representation, failing to collect evidence for trial, failing to cite cases in pretrial motions that Summage felt were important, conceding that the delay resulting in the Speedy Trial Act violation was not

9

intentional, and not requesting that the videotape evidence be fingerprinted.

The first ineffective assistance issue is the effect of Summage's decision to waive his right to counsel and proceed pro se on the first day of trial. Summage argues that he was forced to proceed pro se because Laverty was unprepared for trial. In Strickland, the Supreme Court held, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Accordingly, the "total failure to conduct pre-trial discovery" can constitute ineffective assistance of counsel by undermining counsel's conduct during the trial. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986); Otey v. Grammar, 869 F.2d 1137, 1138 (8th Cir. 1989). The Eighth Circuit has held, "Where a defendant moves for replacement counsel and is told that he must choose between his current counsel and proceeding pro se, his waiver may not be voluntary, depending on the circumstances." United States v. Patterson, 140 F.3d 767, 776 (8th Cir.1998). Nevertheless, "[w]hile the 'Hobson's choice' between proceeding to trial with an unprepared counsel or no counsel at all may violate the right to counsel, there is no constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation." United States v. Washington, 596 F.3d 926, 938 (8th Cir. 2010) (quoting United States v. Ladoucer, 573 F.3d 628, 634 (8th Cir. 2009)).

The Court finds that Summage forfeited any ineffective assistance of counsel claim after he voluntarily waived his right to counsel. First, Summage cannot show that counsel acted ineffectively when he was representing himself. The Court explicitly warned Summage about this aspect of self representation. Trial Tr. at 6. The Supreme Court has noted that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" Faretta v. California, 422 U.S. 806, 834 n.46 (1975). Second, Laverty's performance as standby counsel could not violate Summage's constitutional rights because there is no constitutional right to standby counsel. McKaskle v. Wiggins, 465 U.S. 168, 183 (1984); see also United States v. Schmidt,

10

105 F.3d 82, 90 (2d Cir.1997) ("Absent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective."). This court accordingly dismisses all claims of ineffective assistance of counsel occurring after Summage elected to proceed pro se.

Summage's claims regarding Laverty's performance during pretrial hearings all fail because Summage has failed to adequately allege prejudice. Summage claims that Laverty was ineffective during the speedy trial hearing for conceding that the delay was unintentional, and noting that the court could dismiss the indictment without prejudice. Summage also claims that Laverty was ineffective while arguing that the search warrant should be suppressed due to a conflict of interest within the Scott County Attorney's office because she did not cite case law Summage believed was important. Summage does not credibly claim that the proceedings' results would have been different absent Laverty's conduct. See Strickland, 466 U.S. at 694. He does not explain what authority would have been more persuasive or why the Eighth Circuit would have changed its decision. His claims therefore fail.

Most of Summage's claims regarding Laverty's preparation for trial fail because he does not establish prejudice. Summage's specific allegations are that Laverty was ineffective for not adequately preparing to rebut evidence of his prior sexual misconduct, not communicating with Summage more extensively, not producing a "compilation DVD" of Summage's sexual escapades to "rebut" prosecution DVDs, not subpoenaing enough evidence of prior sexual assault allegations against Summage, and not having the investigator begin earlier. Summage faces a nearly impossible task in establishing prejudice, in part because he elected to proceed pro se. He alleges that Ms. Laverty should have prepared more for the evidence of prior sexual misconduct but he completely fails to disclose what that preparation would have produced that would change the outcome of the trial. The same is true for each of petitioner's ineffective assistance claims. His claims fail because he has not sufficiently alleged that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id.

Several of Summage's evidentiary challenges appear relate to strategic decisions. For example, Summage claims that Laverty was ineffective for not creating a compilation tape of Summage's sexual escapades to rebut prosecution evidence, and for not subpoenaing "fraudulent reports from Brown against [Summage] . . . pertaining to unsubstantiated allegations of sexual assaults." [Pet'r's Mot., Dkt. No. 1 at 36]; see [Pet'r's Ex. 7, Dkt. No. 1-2]. Summage does not explain how that kind of impeachment of his witness would have produced an acquittal. More evidence of the turmoil between Summage and Brown would not have been good for Summage. The Supreme Court has maintained that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 691. Summage's claims regarding Laverty's strategic pretrial choices fail accordingly.

Summage's claim that Laverty "misled" him as to the benefits and risks of self representation clearly fails because this court questioned Summage extensively to ensure he understood the dangers of proceeding pro se.

### C. Challenges to Search Warrant

Summage renews his challenges to the search warrant in Grounds 2, 3, 4, 5, 6, 9, 13, 14, 16, 17 and 23. Summage renews his selective prosecution argument in Ground 8. In Ground 20, Summage renews his argument that he was entitled to a Franks v. Delaware hearing. This court and the Eighth Circuit Court of Appeals have heard and rejected these arguments. Summage II, 575 F.3d at 871–73 (Franks hearing, search warrant challenges); Summage I, 481 F.3d at 1077–80 (8th Cir. 2007) (dismissing various challenges to the search warrant); [Judgment of June 19, 2008, Dkt. No. 39] (Selective Prosecution). "Appellant cannot raise the same issues in a § 2255 petition that have been decided on direct appeal or in a new trial motion." United States v. Kraemer, 810 F.2d 173, 178 (8th Cir. 1987). Grounds 2, 3, 4, 5, 6, 8, 9, 13, 14, 16, 17, 20 and 23 are therefore summarily dismissed.

### D. Jurisdictional Challenge

In Ground 7, Summage contends that federal courts do not have jurisdiction over a case arising out of a state prostitution investigation. Summage was tried and convicted of two counts of production of child pornography in violation of 18 U.S.C. § 2251 and one count of possessing child pornography in violation of 18 U.S.C. § 2252. Federal courts have original, exclusive jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231 (2011). Summage's argument is without merit and is therefore summarily dismissed.

### E. Challenges to the Search Warrant's Execution

Summage attacks the manner in which the search was conducted in Grounds 10, 11, 12 and 15, alleging that the search was overbroad and violated his right to privacy. Summage has already litigated most of these claims on appeal. Summage II, 575 F.3d at 871–73. Summage I, 481 F.3d at 1079–80. To the extent that these grounds set forth new claims, these claims are procedurally defaulted because they could have been raised on appeal. Frady, 456 U.S. at 165; United States v. Samuelson, 722 F.2d 425, 427 (8th Cir. 1983). Similar to his claims of ineffective assistance of counsel, Summage has failed to allege actual prejudice necessary to overcome procedural default. Frady, 456 U.S. at 167.

Ground 10 claims that the search warrant was overbroad and lacking in particularity. The Eighth Circuit Court of Appeals has already heard and rejected this line argument in both First and Fourth Amendment contexts. Summage II, 575 F.3d at 871–72 (First Amendment); Summage I, 481 F.3d at 1079–80 (Fourth Amendment). Ground 10 is summarily dismissed.

Ground 15 alleges that the search "indiscriminately sought and seized materials protected by the First Amendment." [Pet'r's Mot., Dkt. No. 1 at 26]. In Summage II, the Eighth Circuit Court fo Appeals held, "the search warrant did not violate the First Amendment by allowing police to seize materials protected by the First Amendment because there was probable cause to believe that those materials also contained evidence of a crime." 575 F.3d at 872. Ground 15 is summarily dismissed. Kraemer, 810 F.2d at 178.

In Ground 11, Summage claims that the search violated his right to privacy, and that he was unfairly prejudiced when certain clips were played for the jury. Summage argues that the Davenport Police violated his right to privacy by seizing recordings depicting his intimate relationships with other persons; He cites Lawrence v. Texas, 539 U.S. 558 (2003), to support this argument. Summage did not raise this issue on direct appeal, and his claim suffers procedural default. "[S]ection 2255 is not a substitute for direct appeal, and matters which could have been raised on appeal will not be considered." Samuelson, 722 F.2d at 427. Summage also argues that playing portions of the tapes depicting his sexual escapades resulted in unfair prejudice. The Court of Appeals heard and rejected this argument. Summage II, 575 F.3d at 878. Ground 11 is summarily dismissed. Kraemer, 810 F.2d at 178.

In Ground 12 Summage argues that the video recording of his crimes was used in violation of his Fifth Amendment right against self incrimination by "causing the movant to be a witness against himself, in the most literal way." [Pet'r's Mot., Dkt. No. 1 at 23]. This argument fails on the merits for numerous reasons, not the least of which is the fact that Summage was never "compelled" to document his criminal activity. See U.S. CONST. amend. V (No person . . . shall be compelled in any criminal case to be a witness against himself"). This argument is without merit, and accordingly fails.

### F. Fingerprint Evidence

In Ground 18 Summage argues that state and federal law enforcement officials violated his due process rights by neglecting to fingerprint the evidence seized from his home. To succeed on a claim that the failure to preserve evidence violated a criminal defendant's due process rights, that defendant must show that police officers acted in bad faith. Arizona v. Young blood, 488 U.S. 51, 58 (1988); United States v. Scoggins, 992 F.2d 164, 167 (8th Cir. 1993). Summage does not allege investigators acted in bad faith. Negligence is not enough. United States v. Iron Eyes, 367 F.3d 781, 786 (8th Cir. 2004). Detective Noonan testified that Summage never requested that the seized evidence be tested for finger prints. Trial Tr. at

14

239–40.[1] Noonan also testified that he did not believe fingerprint analysis would be able to uncover five-year-old fingerprints left by another possible perpetrator. Trial Tr. at 237. Furthermore, Agent Langdon testified that he did not think fingerprint evidence would be beneficial to Summage's defense. Trial Tr. at 417, 13–14. Summage's claim fails to sufficiently allege a violation of due process because he has not sufficiently alleged that the investigators' failure to preserve fingerprint evidence was in bad faith.

### G. Speedy Trial Act Challenge

Summage renews his Speedy Trial Act arguments in Grounds 19 and 21. Summage previously argued that the District Court violated the Speedy Trial Act and his Sixth Amendment rights by failing to dismiss the government's indictment with prejudice. These issues were fully considered and rejected by this Court and the Eighth Circuit Court of Appeals. Summage II, 575 F.3d at 873–77; [Ruling on Motion for Judgment of Acquittal, Dkt. 91 at 15]. Summage argues that the recent Supreme Court ruling in Bloate v. United States, 130 S. Ct. 1345 (2010), requires this court to reexamine its previous ruling. That argument is unavailing, as Bloate concerned the time that is "automatically excludable from the Act's 70-day limit," and not the standards for deciding whether an indictment should be dismissed with prejudice for violating the Act. Id. at 1349.

Summage presents a new argument that his decision to represent himself on the first day of trial entitled him to a 30-day continuance under 18 U.S.C. 3161(c)(2). This claim fails to raise an error of constitutional magnitude. See Apfel, 97 F.3d at 1076. Furthermore, Summage waived his rights under 18 U.S.C. 1361(c)(2) by failing to raise any objection to the trial court. United States v. Ferguson, 776 F.2d 217, 222 (8th Cir. 1985); United States v. Little, 567 F.2d 346, 349 (8th Cir. 1977). Grounds 19 and 21 are therefore dismissed.

---

[1] This was due in part to Summage's decision to flee Iowa to avoid prosecution. Trial Tr. at 239–40.

### H. Unfair Trial Challenge

In Ground 24 Summage renews several arguments concerning limitations on his ability to cross examine witnesses, time limitations at trial, and presentation of evidence that Summage had been charged with child molestation in Georgia (the "Georgia evidence"). Summage also renews his Batson challenge in Ground 24. These arguments have already been raised before this court, and were affirmed on appeal. Summage II, 575 F.3d at 877–879 (affirming admission Georgia evidence and numerous other evidentiary rulings); [Ruling on Motion for Judgment of Acquittal, Dkt. No. 91] (rejecting Batson challenge, time limitation challenge, challenge to the limitation of Summage's cross examination of Melissa Brown, and challenge to the exclusion of sexual histories of Dorian Turner and Roxanne Gatewood). These arguments have already been heard and rejected, and are summarily dismissed. Kraemer, 810 F.2d at 178.

### I. Access to Discovery Challenge

Summage renews his argument that he had inadequate access to discovery materials in Ground 25. This argument was heard and rejected by the Court of Appeals in Summage II. 575 F.3d at 876–77. Ground 25 is accordingly dismissed. Kraemer, 810 F.2d at 178.

### IV. CONCLUSION

The Court finds that Summage is not entitled to relief pursuant to 28 U.S.C. § 2255. Summage fails to raise a Constitutional claim regarding Brown's supposed recantation testimony because he does not allege that the government knowingly used Brown's false testimony. Summage fails to plead a valid claim of ineffective assistance of counsel because he fails to allege both deficient performance and prejudice, and has forfeited the majority of his claims by electing to proceed pro se. See Strickland, 466 U.S. at 687–94. All of Summage's arguments concerning the search warrant have been raised and adjudicated. See Summage II, 575 F.3d at 871–74 ; Summage I, 481 F.3d at 1078–80. His challenge to the district court's jurisdiction fails under 18 U.S.C. § 3231. See 18 U.S.C. § 3231 (2011). Summage's challenges to the manner in which the search was performed have either been

fully litigated or procedurally defaulted and are dismissed. Frady, 456 U.S. at 165; see Summage II, 575 F.3d at 871–74 ; Summage I, 481 F.3d at 1078–80. Summage's self incrimination argument fails because the government did not compel him to document his criminal acts. U.S. CONST. amend. V. Summage's due process argument regarding fingerprint evidence fails to allege that investigators acted in bad faith. Youngblood, 488 U.S. at 58. Summage's Speedy Trial Act arguments have either been waived or fully adjudicated and are dismissed. Summage II, 575 F.3d at 873–77; [Ruling on Motion for Judgment of Acquittal, Dkt. No. 91 at 15]. The arguments in Ground 24 concerning the fairness of his trial have been raised and fully adjudicated and are dismissed. Summage II, 575 F.3d at 877–879 (affirming admission Georgia evidence and numerous other evidentiary rulings); [Ruling on Motion for Judgment of Acquittal, Dkt. No. 91]. Finally, Summage's claim that he had inadequate access to discovery materials has been raised and fully adjudicated, and is dismissed. Summage II. 575 F.3d at 876–77.

Upon the foregoing,

**IT IS ORDERED** that the Petitioner's November 8, 2010 18 U.S.C. § 2255 Petition [Dkt. No. 1] is denied. Petitioner's motions to proceed in forma pauperis and for discovery [Dkt. Nos. 2 & 3] are denied as moot. The Clerk of Court is directed to enter judgment in favor of the respondent.

**DATED** this 17th day of February, 2011.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA